819 F.2d 408
 55 USLW 2675, 8 Employee Benefits Ca 1889
 The INSURANCE BOARD UNDER the SOCIAL INSURANCE PLAN OF
BETHLEHEM STEEL CORPORATION and Subsidiary
Companies and Pennsylvania Blue Shield
and Pennsylvania Blue Cross
v.
MUIR, William, Acting Insurance Commissioner of the
Commonwealth of Pennsylvania.
Appeal of INSURANCE BOARD UNDER the SOCIAL INSURANCE PLAN OF
BETHLEHEM STEEL CORPORATION and Subsidiary
Companies, Pennsylvania Blue Shield and
Blue Cross of Western
Pennsylvania, Appellants.
 No. 86-5464.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 10, 1987.
Decided May 26, 1987.
As Amended June 8, 1987.
 
 Thomas E. Wood, Keefer, Wood, Allen and Rahal, Harrisburg, Pa., Barbara E. Schlaff, G. Stewart Webb (argued), Clayton H. Paterson, Venable, Baetjer & Howard, Baltimore, Md., Kathleen M. Mills, Law Dept., Bethlehem Steel Corp., Bethlehem, Pa., for appellants.
 Stephen E. Lawton, T. Timothy Ryan, Jr., Charles J. Steele, Carol Colborn, Joel M. Hamme, Pierson, Ball & Dowd, Washington, D.C., for amicus curiae, Washington Business Group on Health.
 Ellis A. Saull (argued), Deputy Atty. Gen., Office of Atty. Gen., Philadelphia, Pa., for Com. of Pa.
 Edward A. Scallet (argued), Thompson & Mitchell, Washington, D.C., for amicus curiae, American Dental Assoc.
 Before HIGGINBOTHAM and STAPLETON, Circuit Judges, and RODRIGUEZ, District Judge.*
 OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge.
 
 
 1
 This is an appeal from a grant of summary judgment for appellee in a declaratory judgment action. On June 2, 1986, 635 F.Supp. 1425, the United States District Court for the Middle District of Pennsylvania denied appellants' motion to reconsider filed pursuant to Fed.R.Civ.P. 59(e) and affirmed its February 28, 1986 order that concluded that certain agreements between Pennsylvania Blue Cross and Blue Shield (collectively "the Blues") and the Insurance Board under the Social Insurance Plan of Bethlehem Steel Corporation and Subsidiaries ("Board") were subject to regulation by the Pennsylvania Department of Insurance. The district court reached this conclusion notwithstanding the fact that the agreements were entered into as part of the Social Insurance Plan of Bethlehem Steel Corporation and Subsidiary Companies ("Plan") under the Employee and Retirement and Income Security Act of 1974 ("ERISA"), 29 U.S.C. Sec. 1001 et seq. (1982). Because we find that the district court's legal analysis of ERISA's effect on the agreements was flawed, we will reverse and direct the district court to grant appellants the declaratory judgment they sought.
 
 I.
 
 2
 The affidavits and pleadings filed in this action indicate the following. The Plan provides several welfare and health programs for Bethlehem Steel and its Subsidiary Corporations, including the Comprehensive Medical Program for the benefit of certain employees and pensioners, the Program of Insurance Benefits for Hourly Paid Employees, and the Program of Hospital and Medical/Surgical Benefits for Eligible Pensioners and Surviving Spouses. The Board administers the Plan, but does so in a manner which is challenged by the appellee in this suit. The Board's contracts with the Blues require each to process participants' claims under the aforementioned programs. Plan participants receive Blue Cross or Blue Shield cards and submit claims on Blue Cross or Blue Shield benefits and claim forms, which are processed by the staff of Blue Cross or Blue Shield in accordance with regular office procedures. Blue Cross and Blue Shield also make initial determinations as to coverage under the Plan. Further, when participants' claims are determined to be valid, Blue Cross or Blue Shield pays participants directly. For purposes of reimbursing the Blues for such payments, the Board advances monthly payments to each equal to the anticipated amount of claims. Each advance monthly payment is based on the amount paid for claims in the second preceding month. The advance payments are to be submitted by the first of each month and if either of the Blues do not receive a payment by the fifth of the month, the unpaid entity or entities are no longer required to process or pay claims and are not obligated to pay claims fully processed at the time of the Board's non-payment. In addition to the advance payment based on previous claims, the Board advances an administrative fee based on the number and type of plan participants.[1] This fee is to be paid on the twentieth of the month preceding the month for which the advance is made.
 
 
 3
 At the end of each period, each of the Blues prepares a settlement. If the amount of claims paid exceeds the Board's advances to either of the Blues, the Board must pay the difference to the appropriate entity within thirty days of notification. If the advance payments exceed the claims paid by either of the Blues, the appropriate entity must remit the difference to the Board. This reconciliation of payments occurs even if the contract is terminated in the middle of a period.
 
 
 4
 The original action in the district court was prompted by a letter, dated June 6, 1985, sent by the Department of Insurance to the Board. In the letter the Department stated it believed that the Program of Insurance Benefits for Hourly Paid Employees did not comply with certain Pennsylvania mandated-benefits laws.[2] After the Board received the letter, appellants[3] brought suit in the United States District Court for the Middle District of Pennsylvania, seeking a declaratory judgment that ERISA preempted Pennsylvania insurance law. The district court granted summary judgment for appellee because it concluded that the Blues were engaged in the business of insurance and therefore subject to state regulation under ERISA. Affirming its earlier judgment, the district court later denied appellants' motion to alter or amend judgment. This appeal followed.
 
 II.
 
 5
 Appellants contend that ERISA, as a comprehensive federal regulatory scheme, preempts Pennsylvania's mandatory benefit and provider laws. Appellants argue that therefore the Department of Insurance may not attempt to enforce those laws as they apply to the Program of Insurance Benefits for Hourly Paid Employees. Appellees assert in response that ERISA does not preclude application of Pennsylvania's mandatory benefit and provider laws here because appellants have essentially purchased an insurance policy from a professional insurer which is, under Metropolitan Life Ins. Co. v. Massachussetts, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), subject to state insurance regulation laws. We now resolve these conflicting assertions. Since our consideration of the district court's grant of summary judgment involves only a question of law, our standard of review is plenary. See Fed'n of Westhinghouse Indep. Salaried Unions v. Westinghouse Elec. Corp., 736 F.2d 896 (3rd Cir.1984).
 
 III.
 
 6
 In Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), the Massachusetts Attorney General brought an action against an insurer to enforce Massachusetts Gen. Laws. Ann., ch. 175, Sec. 47B (West Supp.1985), which required health insurance policies, and any benefit plans that incorporated such policies, to provide a certain minimum of mental health protection if such policies or plans provided hospital and surgical coverage.[4] The insurer maintained that ERISA precluded the application of state mandated-benefit laws to insurance policies purchased by employee-health care plans regulated by ERISA. After rulings by the Massachusetts Superior Court and The Massachusetts Supreme Judicial Court, the United States Supreme Court on appeal rejected the insurer's assertion. The Court first noted that federal law provided that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 471 U.S. at 731, 105 S.Ct. at 2385. The Court went on to note, however, that this broad preemption provision of ERISA was qualified by an "insurance saving clause," which provided that no ERISA provision "shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 471 U.S. at 731-33, 105 S.Ct. at 2385-86. The Court further noted that the insurance saving clause, which qualified the preemption provision, was itself qualified by a "deemer clause," which provided that no employee benefit plan of the type at issue:
 
 
 7
 shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.
 
 
 8
 Id. 105 S.Ct. at 2386. The Court thus found that ERISA creates a scheme in which any entity engaged in the business of insurance, except an ERISA employee benefit plan, is subject to state insurance regulation. The Court therefore framed the question facing it as whether the sale of insurance to ERISA benefit plans by professional insurers constitutes the business of insurance for purposes of ERISA. The Court concluded that ERISA permitted states to regulate insurance policies purchased by plans from insurance companies, though ERISA did not permit states to regulate the plans themselves. The Court noted that
 
 
 9
 our decision results in a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not. By so doing we merely give life to a distinction created by Congress in the "deemer clause," a distinction Congress is aware of and one it has chosen not to alter.
 
 
 10
 471 U.S. at 746, 105 S.Ct. at 2393.
 
 
 11
 This appeal presents a slightly different question than that presented by Metropolitan Life. There, the issue was whether an insurer selling an insurance policy to an ERISA benefit plan engages in the business of insurance. Here, the issue is whether an insurer who sells certain administrative services to an ERISA plan thereby engages in the business of insurance so as to be subject to state regulation.
 
 
 12
 The Metropolitan Life Court cited three factors relevant in determining whether a particular practice falls within the business of insurance. These factors, identified initially in connection with the McCarran-Ferguson Act, 15 U.S.C. Sec. 1011 et seq. (1982), which allows for state regulation of insurance, are:
 
 
 13
 first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry.
 
 
 14
 Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 129, 102 S.Ct. 3002, 3008, 73 L.Ed.2d 647 (1982) (emphasis in original). It would appear that no criterion is determinative.[5] Id.
 
 
 15
 The first criterion suggests that the Blues are not engaged in the business of insurance. Under the challenged agreement, the Board remains solely responsible for payment of Plan benefits to participants. In the event that advances to the Blues do not cover claims payments, the Board is obligated promptly to reimburse them. Indeed, even if the agreement is terminated mid-term, the Board must reconcile its advances and payments by the Blues. As a consequence, the Blues never make claims payments which the Board is not obligated to reimburse. The Board therefore completely assumes the financial risk that a Plan participant will file a valid claim.
 
 
 16
 The second criterion also suggests challenged arrangement is not an insurance policy. Application of this criterion in this context is somewhat problematic. The second Pireno criterion is usually applied to relationships in which the parties are indisputably insurer and insured. Here, the criterion is being applied to an uncharacterized relationship to determine whether it may be characterized as insurer-insured. The appropriate interpretation of the second criterion would seem to require us to determine whether the Blues provide a service which is an essential part of the insurance relationship between the Board and Plan participants. For if this is true, then the Blues have assumed a significant responsibility for the provision of insurance to Plan participants, thereby indicating that they are involved in the business of insurance. Here, the arrangement requires the Blues to fulfill no such responsibility. The Blues merely provide administrative services by processing claims.[6] Since presumably Plan participants are concerned only with whether their claims are paid, not who processes their claims, the Blues' role cannot be characterized as essential. Cf. Union Labor Life Co. v. Pireno, 458 U.S. 119, 132, 102 S.Ct. 3002, 3010, 73 L.Ed.2d 647 (1982) (method of determining claim is "a matter of indifference to the policyholder, whose only concern is whether his claim is paid, not why it is paid") (emphasis in original). The relative insignificance of the Blues' role is also indicated by the fact that other entities could provide the services provided by them without altering the basic terms of the agreement between the Board and the Plan participants.
 
 
 17
 The third criterion also suggests that the challenged practice is not within the business of insurance. This criterion looks to whether the practice is limited to entities within the insurance industry. Clearly, entities outside the industry provide administrative services in connection with an insurance policy. In fact, the Supreme Court has recognized that Blue Cross and Blue Shield themselves should be characterized as entities outside the industry when they merely provide services in connection with insurance. See Group Life & Health Ins. Co. v. Royal Drug Co., 440 U.S. 205, 225-26, 99 S.Ct. 1067, 1080, 59 L.Ed.2d 261 (1979) (Blue Cross and Blue Shield, organized to provide medical services, are "not considered to be engaged in the insurance business at all"); see also, id. at 229, 99 S.Ct. at 1082, ("[the] Blue Cross and Blue Shield organizations themselves have [successfully] taken the position that they are not insurance companies"). We therefore must find that entities outside the insurance industry engage in the practice challenged in this suit.
 
 
 18
 Since each Pireno criteria indicates that the Blues are not here engaged in the business of insurance, we find that they are not so engaged. We therefore conclude that ERISA's insurance savings clause does not here save the relevant Pennsylvania mandated-benefit laws from preemption. Pennsylvania therefore may not enforce those laws against the Board's Plan. Accordingly, the judgment of the district court will be vacated and this case remanded to the district court with instructions to enter an appropriate judgment.
 
 IV.
 
 19
 The district court's judgment will be vacated and the district court directed to enter a judgment in appellant's favor.
 
 
 
 *
 Honorable Joseph H. Rodriguez, United States District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 The Blues charge administrative fees of $3.70 per participant per month for hourly paid employees and $2.05 per participant per month for eligible pensioners, respectively
 
 
 [2]
 The district court determined that the alleged deficiencies "related to coverage for newborn children, 40 P.S. Secs. 771-74 (Purdon Supp.1985), coverage for psychological testing services, id. at Secs. 767-69, maternity coverage, id. at Secs. 3001-03 and coverage for certain health care providers." Insurance Bd. Under Social Ins. Plan of Bethlehem Steel Corp. v. Muir, 628 F.Supp. 1537, 1538 n. 4 (M.D.Pa.1986). Since plaintiff's amended complaint and defendant's answer do not make clear the statutes under which the Plan is challenged, we accept the district court's determination on this issue
 
 
 [3]
 Blue Cross intervened in the action brought by the other appellants. See Insurance Bd. Under Social Ins. Plan, 628 F. Supp. at 1538 n. 1
 
 
 [4]
 Section 47B provided:
 Any blanket or general policy of insurance ... of any policy or accident and sickness insurance ... or any employees' health and welfare fund which provid[es] hospital expense and surgical expense benefits and which [is] promulgated or renewed to any person or group of persons in this commonwealth ... shall, provide benefits for expense of residents of the commonwealth covered under any such policy or plan, arising from mental or nervous conditions as described in the standard nomenclature of the American Psychiatric Association which are at least equal to the following minimum requirements:
 (a) In the case of benefits based upon confinement as an inpatient in a mental hospital ... the period of confinement for which benefits shall be payable shall be at least sixty days in any calendar year....
 (b) In the case of benefits based upon confinement as an inpatient in a licensed or accredited general hospital, such benefits shall be no different than for any other illness.
 (c) In the case of out-patient benefits, these shall cover, to the extent of five hundred dollars over a twelve-month period, services furnished (1) by a comprehensive health service organization, (2) by a licensed or accredited hospital (3) or subject to the approval of the department of mental health services furnished by a community health center or other mental health clinic or day care center which furnishes mental health services or (4) consultations or diagnostic or treatment sessions.
 Massachusetts Gen. Laws. Ann., ch. 175, Sec. 47B (West Supp.1985), quoted in Metropolitan Life, 471 U.S. 724, 105 S.Ct. 2380, 2384 n. 11, 85 L.Ed.2d 728.
 
 
 [5]
 Pireno is somewhat ambiguous about the weight to be given each criterion. Initially, Pireno suggests that risk-transference is "an indispensable characteristic of insurance," Pireno, 458 U.S. at 127, 102 S.Ct. at 3007 (quoting Group Life & Health Ins. Co. v. Royal Drug Co., 440 U.S. 205, 211-12, 99 S.Ct. 1067, 1073, 59 L.Ed.2d 261 (1979)), thereby implying that without a finding of risk-transference a determination that a practice constitutes the business of insurance is impossible. However, in evaluating a practice alleged to constitute the practice of insurance, the Pireno decision itself proceeds to consider the second and third criteria after concluding that no risk-transference occurred. Pireno, 458 U.S. at 131-33, 102 S.Ct. at 3009-10. The district court in this action interpreted Pireno to mean that risk-transference is not an indispensable element of insurance in the sense that a finding of risk-transference is necessary for a determination that a practice constitutes the business of insurance. App. at 185. Since we find that in this case each of the Pireno criteria indicates that the disputed practice does not constitute the business of insurance, we will not attempt to resolve whether "the business of insurance" requires transference of risk
 For a recent consideration of the significance of Metropolitan Life in another context, see Pilot Life Insurance Co. v. Dedeaux, --- U.S. ----, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (holding that specific state tort and contract laws do not regulate "business of insurance").
 
 
 [6]
 The Blues' provision of cards and claim forms, as well as the Blues' initial determination of Plan coverage, do not constitute essential elements of the relationship between Plan participants and the Board. The performance of these administrative functions, in addition to others, have been determined to be non-essential features of an insurance arrangement. See e.g., Powell v. Chesapeake & Potomac Tel. Co. of Va., 780 F.2d 419, 423 (4th Cir.1985) (provision of claim forms, determination of plan coverage, preparation of monthly and annual reports, and review of denied claims "purely administrative" and not essential); see also Moore v. Provident Life & Accident Ins. Co., 786 F.2d 922, 927 (9th Cir.1986) (administrator's ability to review, defend, and/or settle claims did not render it insurer)