820 F.2d 62
 125 L.R.R.M. (BNA) 2690, 55 USLW 2675,
106 Lab.Cas. P 12,417,
Bankr. L. Rep. P 71,820
 ELSINORE SHORE ASSOCIATES f/k/a Playboy Elsinore Associates,
a New Jersey Partnership d/b/a The Atlantis Casino Hotel
v.
LOCAL 54, HOTEL EMPLOYEES AND RESTAURANT EMPLOYEES
INTERNATIONAL UNION, an unincorporated association on behalf
of itself and all of its members as members and
individually, and Roy Silbert, and Jon Doe and Jane Doe, et al.
Appeal of HOTEL AND RESTAURANT EMPLOYEES INTERNATIONAL UNION LOCAL 54.
 Nos. 86-5660 and 86-5711.
 United States Court of Appeals,
Third Circuit.
 Submitted Pursuant To Third Circuit
Rule 12(6)
Feb. 10, 1987.
Decided May 26, 1987.
Rehearing and Rehearing In Banc Denied June 25, 1987.
 
 Ronald H. Surkin, Peter S. Pantaleo, Sarah A. Kelly, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for appellee.
 Bernard N. Katz, Michael N. Katz, Meranze and Katz, Philadelphia, Pa., for appellant.
 Before HIGGINBOTHAM and STAPLETON, Circuit Judges and CONABOY, District Judge*.
 OPINION OF THE COURT
 STAPLETON, Circuit Judge:
 
 
 1
 Local 54 of the Hotel Employees and Restaurant Employees International Union (the Union) appeals from the temporary restraining order and subsequent preliminary injunction entered by the U.S. Bankruptcy Court for the District of New Jersey, 66 B.R. 743, that prohibit the Union from striking against or otherwise interfering with the operations of the Atlantis Casino Hotel in Atlantic City, New Jersey. Appellee Elsinore Shore Associates (Elsinore), a debtor-in-possession under the protection of Chapter 11 of the Bankruptcy Code, does business as the Atlantis Casino Hotel. The bankruptcy court granted this injunctive relief after concluding that Elsinore had satisfied the prerequisites for such relief prescribed by the Supreme Court in Boys Markets, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). The lower court based its decision on findings that: 1) the dispute triggering the strike was a disagreement about the respective rights of the parties under the "wage reopener" clause; 2) this issue was arbitrable; 3) Elsinore had offered to arbitrate this issue; 4) a strike would cause irreparable injury to Elsinore; and 5) the injury caused by a strike would exceed the injury to the Union caused by an injunction.
 
 
 2
 As a preliminary matter, we conclude that this court has appellate jurisdiction over the direct appeal of the preliminary injunction from the bankruptcy court. Despite the general practice of appealing bankruptcy court decisions to the district courts, 28 U.S.C. Sec. 158 (Supp. II 1984), we hold that the Norris-LaGuardia Act, 29 U.S.C. Sec. 110 (Supp. II 1984), authorizes the Union to appeal directly to this court from the bankruptcy court's issuance of a preliminary injunction in this case involving a labor dispute. We decline to review the validity of the temporary restraining order because it is no longer in effect and no contempt order has been issued for violation thereof.
 
 
 3
 With respect to the propriety of the preliminary injunction, we hold that the bankruptcy court committed clear error in finding that the underlying dispute was arbitrable. Finding that the prerequisites for a Boys Markets injunction were not satisfied, we vacate that portion of the preliminary injunction that prohibits work stoppages. We do not disturb that portion of the injunction which requires the parties to arbitrate their dispute concerning the legality of a strike under the contract.
 
 I.
 
 4
 Local 54 and Elsinore are parties to a collective bargaining agreement which became effective on October 19, 1983 and remains in effect until September 14, 1988. Article XXI of the contract, entitled "Term of Contract," states in part:
 
 
 5
 2. This contract shall remain in full force and effect until September 14, 1988, provided, however, that for the exclusive purpose of negotiating wage rates and contribution levels for existing benefit funds as described in Article XV, this contract shall be reopened on September 15, 1986. Failing agreement if this Agreement is reopened (consistent with terms and limits of the reopener), the Union may strike as if the contract had been terminated in accordance with all of the provisions of ARTICLE XVII. Provided further that sixty (60) days prior written notice of an intention to terminate, modify or amend the contract is given by one (1) Party to the other. In the event no such notice is given, then this contract shall continue in full force and effect until such time as a sixty (60) day notice is so given.
 
 
 6
 App. at 46 (emphasis in original). Article XVII, entitled "No Strikes--No Lockouts," states in part:
 
 
 7
 1. ... The Union agrees that it will not call, engage in or sanction any strike, sympathy strike, work stoppage, slow-down, picketing, sit-down, sit-in, boycott, refusal to handle merchandise or any other interference with the conduct of Employer's business for any reason whatsoever....
 
 
 8
 2. The Union agrees that notwithstanding the provisions for the termination of this contract, during the time of negotiations after the expiration date, the Parties hereto shall continue to operate in accordance with the terms of this Agreement as though same had not expired, unless Employer shall give written notice to the Union that it does not intend to operate under the terms of this Agreement, and the Union agrees that unless said notice is given by Employer, the provisions of Articles XVII and XVIII herein shall be applicable during said period of negotiations.
 
 
 9
 App. at 42.
 
 
 10
 Prior to September 15th, 1986, the parties conducted negotiations pursuant to the Article XXI "wage reopener" provision. The Union sought increased wages and fringe benefit contributions, while Elsinore offered only to continue paying Union employees according to the existing wage and benefit schedules in the contract. The Union offered to engage in voluntary arbitration on the question of wage and benefit levels for the final two contract years and threatened to strike at 12:01 a.m. on September 16th if no agreement was reached and the offer of voluntary arbitration was rejected. Elsinore rejected the Union's offer to arbitrate wage levels. Elsinore took the position that the contract remained in effect until September 1988 if no agreement was reached under the reopener so long as Elsinore complied with the terms of the contract, including the most recent wage and benefit schedules.[1] Elsinore further claimed that a strike was not authorized under the contract because Elsinore had not given the Union notice of termination as required under Article XVII, the "no-strike" clause. Elsinore offered to arbitrate the contractual rights of the parties under the wage reopener. The Union rejected this arbitration offer.
 
 
 11
 On the afternoon of September 15th, Elsinore sought a temporary restraining order from Judge Rosemary Gambardella of the U.S. Bankruptcy Court for the District of New Jersey. The Union received telephone notice of the hearing and counsel for the Union was present. Elsinore presented affidavit and documentary evidence and the court heard extensive argument. On the evening of the 15th, the court issued a temporary restraining order, effective for ten days, enjoining a strike against Elsinore and requiring the parties to comply with the mandatory grievance and arbitration procedures with respect to the rights of the parties under the wage reopener clause. The court held that Elsinore qualified for the anti-strike injunction under Boys Markets, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), which authorizes a court to enjoin a strike if the employer establishes that: 1) the contract contains an implicit or explicit no-strike provision; 2) the dispute giving rise to the strike is subject to mandatory arbitration under the contract; 3) the employer has offered to submit the dispute to arbitration, and 4) the issuance of an injunction is warranted under the ordinary principles of equity. The principal disagreement between the parties concerned the identification of the dispute giving rise to the strike. The Union argued that it threatened to strike because the parties had been unable to agree on new wage and fringe benefit schedules to be applied over the final two years of the contract, an issue both parties agree is beyond the scope of the contract's arbitration clause.[2] Elsinore argued that the dispute was over the rights of the parties under the wage reopener clause in the event that no new wage agreement was reached, particularly the employer's right to continue operating under the wage and fringe benefit terms of the existing collective bargaining agreement and the Union's right to strike. The court agreed with Elsinore, finding that "the dispute between the parties, giving rise to the threatened strike concerns the respective rights of the parties and their differing interpretations of the wage reopener clause of the Agreement." App. at 162. The court further found that this issue was arbitrable under Article IV of the collective bargaining agreement,[3] that Elsinore would suffer great harm if there was a strike and that the Union would suffer minimal harm under a strike injunction.
 
 
 12
 On September 16th, in spite of the temporary restraining order, Local 54 commenced a strike against Atlantis and several other Atlantic City hotel casinos covered by the same collective bargaining agreement.[4] Elsinore immediately filed a petition for contempt and the Union moved for a stay pending appeal. The bankruptcy court denied the stay and declined to consider the contempt petition. A single judge of this court denied without prejudice the Union's application for a stay pending appeal. The Atlantis employees returned to work on September 17 without an agreement.
 
 
 13
 On September 25, the bankruptcy court held a hearing on the request for a preliminary injunction. At that hearing, Elsinore employees testified about the nature of the dispute underlying the strike and the harm caused by the strike. The court again found:
 
 
 14
 the dispute between the parties, giving rise to the strike concerns the respective rights of the parties and their differing interpretations of the wage reopener clause of the Agreement. The interpretation of that clause, or of any acts, conduct or relations between the parties directly or indirectly, which arise out of the contract is contained within the broad grievance and arbitration provisions of Article IV of the Agreement.
 
 
 15
 App. at 325. On the basis of this finding, the court granted a preliminary injunction which barred further strikes by Local 54 against Atlantis and required the parties to arbitrate their contract interpretation disputes.
 
 
 16
 This consolidated appeal of both the temporary restraining order and the preliminary injunction followed.
 
 II.
 
 17
 Before addressing the merits of the Union's challenge, we focus on issues of appealability and jurisdiction. The temporary restraining order has expired and has been superceded by a preliminary injunction. The Union claims that the validity of the temporary restraining order is not moot because of Elsinore's outstanding petition for contempt. The issue of the restraining order's validity as it might relate to a finding of contempt is not ripe for review, because no contempt order has been issued. See United States Steel Corp. v. Fraternal Ass'n of Steel Haulers, 601 F.2d 1269, 1273 (3d Cir.1979) ("Civil contempt becomes appealable only when the contemnor has refused to comply with the remedial order and the court has exercised its authority either to punish or to coerce compliance."). Thus, we dismiss the appeal with respect to the temporary restraining order.
 
 
 18
 Although both parties assert that this court has jurisdiction to adjudicate the appeal from the preliminary injunction, we have a responsibility to address that issue sua sponte if there is any question. Liberty Mut. Ins. Co. v. Wetzel, 424 U.S. 737, 740, 96 S.Ct. 1202, 1204, 47 L.Ed.2d 435 (1976). Bankruptcy courts have jurisdiction to "hear and determine ... all core proceedings ... arising in a case under title 11." 28 U.S.C. Sec. 157(b)(1) (Supp. II 1984). In contrast, "[a] bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," but the bankruptcy judge must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge." 28 U.S.C. Sec. 157(c)(1) (Supp. II 1984). This request for a Boys Markets injunction was a "matter[ ] concerning the administration of the estate," and therefore was a core proceeding. 28 U.S.C. Sec. 157(b)(2)(A) (Supp. II 1984). Thus, the bankruptcy court had jurisdiction to enter a final order on Elsinore's petition for Boys Markets injunctive relief. See In re Warren-Ehret-Linck Co., 52 B.R. 47 (Bankr.E.D.Pa.1985) (bankruptcy court considered merits of debtor's petition for Boys Markets injunction).
 
 
 19
 The parties rely on the appellate review provision of the Norris-LaGuardia Act as the basis for this court's jurisdiction:
 
 
 20
 Whenever any court of the United States shall issue or deny any temporary injunction in a case involving or growing out of a labor dispute, the court shall, upon the request of any party ... forthwith certify as in ordinary cases the record of the case to the court of appeals for its review. Upon the filing of such record in the court of appeals, the appeal shall be heard and the temporary injunctive order affirmed, modified, or set aside expeditiously.
 
 
 21
 29 U.S.C. Sec. 110 (Supp. II 1984). The bankruptcy court, a unit of the district court, 28 U.S.C. Sec. 151 (Supp. II 1984), falls within the Norris-LaGuardia Act's definition of "court of the United States." 29 U.S.C. Sec. 113(d) (1982) (" 'court of the United States' means any court of the United States whose jurisdiction has been or may be conferred or defined or limited by Act of Congress"). As the language of Sec. 110 reflects, Congress intended to allow interlocutory appeals of decisions granting or denying temporary injunctions in cases concerning labor disputes in order to provide court of appeals review as expeditiously as possible.
 
 
 22
 The authority conferred by Sec. 110 is in conflict with the directive of the 1984 bankruptcy amendments that orders and judgments of the bankruptcy courts are to be appealed to the U.S. District Court or, if provided for by a circuit's rules, to a three-judge bankruptcy appellate panel. 28 U.S.C. Sec. 158 (Supp. II 1984). The courts of appeal have jurisdiction, in turn, to entertain appeals from the district courts and bankruptcy panels. 28 U.S.C. Sec. 158(d) (Supp. II 1984). We hold that the specific policy of expediting court of appeals review of actions under the Norris-LaGuardia Act overrides the general procedural policy of requiring appeals from the bankruptcy court in core proceedings to go first to the district court.[5] Thus, we conclude that we do have jurisdiction to hear the direct appeal from the preliminary injunction.
 
 III.
 
 23
 Section 1 of the Norris-LaGuardia Act, 29 U.S.C. Sec. 101 (1982), states that the Act is the exclusive source of federal court jurisdiction to issue injunctive relief in cases involving or growing out of labor disputes. Section 4, 29 U.S.C. Sec. 104 (1982), states that the courts of the United States shall not have jurisdiction to enjoin specified labor actions, including strikes. In 1970, however, the Supreme Court carved out a narrow exception to this seemingly absolute rule against issuance of strike injunctions by federal courts. Boys Markets, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). The Court held that:
 
 
 24
 "When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract does have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike. Beyond this, the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity--whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance."
 
 
 25
 398 U.S. at 254, 90 S.Ct. at 1594 (quoting Sinclair Ref. Co. v. Atkinson, 370 U.S. 195, 228, 82 S.Ct. 1328, 1346, 8 L.Ed.2d 440 (1962) (dissenting opinion) (emphasis in original)). The Boys Markets decision reflects a recognition "that a refusal to arbitrate was not 'part and parcel of the abuses against which the [Norris-LaGuardia] Act was aimed,' and that the Act itself manifests a policy determination that arbitration should be encouraged." 398 U.S. at 242, 90 S.Ct. at 1588 (citation omitted).
 
 
 26
 An employer must establish that the underlying cause of the strike is arbitrable, and cannot obtain a Boys Markets injunction simply by showing that the contractual right to strike is both disputed and arbitrable. "In Buffalo Forge [Co. v. United Steelworkers, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976) ], the Court ... held that the Boys Markets exception does not apply when only the question whether the strike violates the no-strike pledge, and not the dispute that precipitated the strike, is arbitrable under the parties' collective-bargaining agreement."[6] Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Ass'n, 457 U.S. 702, 709, 102 S.Ct. 2672, 2678, 73 L.Ed.2d 327 (1982) (footnote omitted).
 
 
 27
 The Union emphasizes two related arguments: 1) the court below erred in failing to find that the strike was precipitated by the nonarbitrable dispute about whether higher wages and fringe benefits would be paid over the final two years of the contract; and 2) even if the court's finding that the strike was triggered by disagreement over the interpretation of the wage reopener clause is not clearly erroneous, the only disputed right under the wage reopener is the right of the Union to strike, and a Boys Markets injunction cannot be issued where the only arbitrable question is the contractual right to strike.
 
 
 28
 "The underlying dispute is the event or condition that triggered the responsive strike or employer action." International Union United Auto. Workers v. Lester Eng'g Co., 718 F.2d 818, 823 (6th Cir.1983). The Union claims that it struck because negotiations under the wage reopener had produced no agreement with Elsinore on whether higher wages and fringe benefits would be paid over the final two contract years. All of the evidence presented below supports this conclusion. Even Jeanne Hood, the chief executive officer of Elsinore, testified that Union officials had indicated that the Union would strike if no wage increase was granted. There is no evidence in the record of any other motivation on the part of the Union. Accordingly, we hold that the bankruptcy court was clearly erroneous when it concluded that the dispute "giving rise to the strike concerns the respective rights of the parties and their differing interpretations of the wage reopener clause." App. at 325.
 
 
 29
 Elsinore points to no direct evidence suggesting that the Union did anything other than strike for higher wages and benefits. It suggests, however, that there is inferential evidence that the Union was motivated to strike by an understanding that the contract had been terminated because, in Elsinore's view, striking in any other circumstance was forbidden by the contract. From this premise, Elsinore deduces the existence of an arbitrable underlying dispute concerning whether the contract was in fact terminated. For a number of reasons, we find this argument flawed.
 
 
 30
 First, we are unable to accept the proposition that the only possible interpretation of the agreement bars all strikes in the absence of a full contract termination. While we must leave it for the arbitrator to definitively determine the meaning of the agreement, we believe an arbitrator could read it to provide that the contract remains "in full force and effect until September 14, 1988," that the reopening is "for the exclusive purpose of negotiating wage rates and contribution levels," and that, if the contract is reopened for that exclusive purpose, the Union may strike in support of its wage and fringe benefit demands. Since the alleged tie between termination and the right to strike is debatable and since there is no evidence that the Union has ever taken the position that the contract is terminated, the terms of the contract and the fact that the Union struck do not provide evidentiary support for the district court's conclusion concerning the dispute which occasioned the strike.
 
 
 31
 Moreover, even if we were to assume there was some evidence that the Union viewed the contract as terminated, this would not help Elsinore's cause. While Elsinore characterizes the contract interpretation issue as being whether the contract has terminated, at present, the only relevance of this issue is in the context of the dispute over whether the Union has the right to strike. Since the only contract interpretation dispute revealed by this record is whether the Union has a right to strike, the bankruptcy court's issuance of the preliminary injunction was contrary to the teachings of Buffalo Forge and Jacksonville Bulk Terminals.[7]
 
 
 32
 Finally, we believe Elsinore's insistence that contract issues rather than wage demands constitute the "underlying dispute" is inconsistent with the Supreme Court's understanding of that concept as articulated in Jacksonville Bulk Terminals. In that case, the employer argued that there was a precipitating dispute about the rights of the employer under the management-rights and work-conditions clauses, while the Union maintained that the strike was a non-arbitrable protest of the Soviet invasion of Afghanistan. The following observations of the Court are of particular interest in the context of the current case:
 
 
 33
 The "underlying" disputes concerning the management-rights clause or the work-conditions clause simply did not trigger the work stoppage. To the contrary, the applicability of these clauses to the dispute, if any, was triggered by the work stoppage itself. Consideration of whether the strike intruded on the management-rights clause or was permitted by the work-conditions clause may inform the arbitrator's ultimate decisions on whether the strike violates the no-strike clause. Indeed, the question whether striking over a nonarbitrable issue violates other provisions of the collective-bargaining agreement may itself be an arbitrable dispute. The fact remains, however, that the strike itself was not over an arbitrable dispute and therefore may not be enjoined pending the arbitrator's ruling on the legality of the strike under the collective-bargaining agreement.
 
 
 34
 Jacksonville Bulk Terminals, 457 U.S. at 721-22, 102 S.Ct. at 2685. Similarly in this case, the dispute as to whether a strike violates the contract and any disagreements about subsidiary issues upon which that issue may turn have been triggered by the work stoppage; they are the effect rather than cause of the work stoppage.
 
 
 35
 Elsinore suggests that if we hold for the Union in this case, unions will be able to breach contracts with impunity. In the face of similar arguments, the Supreme Court has consistently held that specific enforcement of no-strike pledges pending arbitration is not available from federal courts unless the underlying cause of the strike is arbitrable. Moreover, we hasten to add that the limited availability of Boys Markets injunctions does not leave employers without legal recourse. If the arbitrator determines that the strike is illegal, the arbitrator's decision can be specifically enforced. Buffalo Forge, 428 U.S. at 405, 96 S.Ct. at 3146-47. The Norris-LaGuardia Act does not bar federal courts from granting relief for illegal strikes in the form of damages. Finally, an illegal strike may constitute an unfair labor practice under section 8(b)(3) of the National Labor Relations Act (NLRA), 29 U.S.C. Sec. 158(b)(3) (1982), and unfair labor practices can be enjoined under section 10(j) of the NLRA without regard for the Norris-LaGuardia limitations. 29 U.S.C. Sec. 160(j), (h) (1982). See Cantor, Strikes Over Non-Arbitrable Labor Disputes, 23 B.C.L.Rev. 633, 662 (1982).
 
 
 36
 In sum, we hold that the bankruptcy court's factual finding concerning the cause of the strike was clearly erroneous. The precipitating cause of the strike was the failure of the parties to reach agreement on new wage schedules under the wage reopener, a non-arbitrable extra-contract dispute. Thus, the bankruptcy court erred in concluding that the arbitrability requirement for a Boys Markets strike injunction was satisfied. We do not disturb the portion of the injunction requiring the parties to arbitrate the dispute concerning the legality of the strike because orders to arbitrate are not precluded by the Norris-LaGuardia Act.
 
 IV.
 
 37
 For these reasons, we will vacate the portion of the preliminary injunction barring work stoppages, but will leave intact the portion of the preliminary injunction requiring the parties to comply with the contract's arbitration procedures with respect to the dispute over the legality of the strike. We will dismiss the appeal of the temporary restraining order for want of jurisdiction.
 
 
 
 *
 Honorable Richard P. Conaboy, United States District Judge for the Middle District of Pennsylvania, sitting by designation
 
 
 [1]
 The contract provides for wage and benefit contribution increases over the course of the first three years
 
 
 [2]
 The arbitration clause in the collective bargaining agreement states "[t]he arbitrator shall have no authority to alter, amend, add to, subtract from, or otherwise change the terms and conditions of this Agreement." App. at 28
 
 
 [3]
 Article IV of the collective bargaining agreement states in relevant part:
 
 
 [1]
 All timely grievences arising between the Parties hereto, unless otherwise stipulated herein, involving questions of interpretation, or application of any clause in this Agreement, or any acts, conduct or relations between the Parties, directly or indirectly, which arise out of the contract, shall be resolved by utilization of the following [grievence and arbitration procedure.]
 App. at 27.
 
 
 [4]
 On September 16th, District Court Judge Stanley Brotman entered a Boys Markets temporary injunction against Local 54's strike at Harrah's Marina Hotel Casino. Harrah's Marina Hotel Casino v. Hotel and Restaurant Employees and Bartenders International Union, Local 54, Civil Action No. 86-3546 (D.N.J. September 16, 1986) (reproduced as App. A to Elsinore's Brief)
 
 
 [5]
 This accommodation of the bankruptcy and labor statutes is consistent with holdings that the anti-injunction provisions of the Norris-LaGuardia Act were not superceded by the subsequently enacted bankruptcy laws. See In re Petrusch, 667 F.2d 297 (2d Cir.1981) (automatic stay provision of the 1978 Bankruptcy Reform Act did not supercede the Norris-LaGuardia Act), cert. denied, 456 U.S. 974, 102 S.Ct. 2238, 72 L.Ed.2d 848 (1982); In re Crowe & Associates, Inc., 713 F.2d 211 (6th Cir.1983) (same); Briggs Transp. Co. v. International Bhd. of Teamsters, 739 F.2d 341 (8th Cir.) (NLRB v. Bildisco & Bildisco, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), which upheld the abrogation of collective bargaining agreements pursuant to court order in Chapter 11 proceedings, did not alter Norris-LaGuardia's jurisdictional limitations on labor injunctions), cert. denied, 469 U.S. 917, 105 S.Ct. 295, 83 L.Ed.2d 230 (1984). Compare Haggard, The Power of the Bankruptcy Court to Enjoin Strikes: Resolving the Apparent Conflict Between the Bankruptcy Code and the Anti-Injunction Provisions of the Norris-LaGuardia Act, 53 Geo.Wash.L.Rev. 703 (1985) (recommending exception to Norris-LaGuardia Act for bankrupt employers)
 
 
 [6]
 There may be a contractual duty to arbitrate a right to strike issue even if no injunction is available pending the outcome of arbitration. Buffalo Forge, 428 U.S. at 410, 96 S.Ct. at 3149. "[W]ere the issue [of the right to strike] arbitrated and the strike found illegal, the relevant federal statutes as construed in our cases would permit an injunction to enforce the arbitral decision." Id., at 405, 96 S.Ct. at 3147
 
 
 [7]
 At times Elsinore characterizes the contract interpretation issue as whether the current contract governs wage and fringe benefit rates unless and until an agreement is reached in the reopened negotiations. It then asserts that it believes the contract continues to govern these matters, that this is an arbitrable issue, and that this provides a basis for a Boys Market injunction. Not surprisingly, however, the Union has not taken the position that Elsinore is free to pay less than current contract rates during the period prior to a new wage agreement. Nor has the Union taken the position that Elsinore must pay more than current contract rates pending a new agreement. Accordingly, there is no evidence in the record suggesting that the Union contests Elsinore's view of the rates that are currently payable or that any disagreement on this issue triggered the strike